UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re CREDIT SUISSE – AOL SECURITIES LITIGATION | Case No. 1:02 CV 12146 (Judge Gertner) |
| This Document Relates To: ALL ACTIONS | **REDACTED MEMORANDUM** |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND
TESTIMONY RELATED TO RENE M. STULZ'S COMPENSATION**

In Plaintiff's Motion To Compel Production Of Documents And Testimony Related To René M. Stulz's Compensation (see Dkt. at 248), (the "Motion")[1], Plaintiff requested that the Court compel production of the documents described in a July 18, 2008 letter (and subsequent correspondence) to Defendants, and the documents and testimony described in a July 31, 2008 subpoena *duces tecum* to Cornerstone. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[1] The terms used herein are as defined in the Motion.

[2] ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



This information is relevant to Professor Stulz's financial incentive to testify favorably for Defendants and to a determination of whether his prior compensation disclosures and testimony were false. Therefore, it should be produced.

In their responsive brief filed on September 15, 2008 (the "Response"), Defendants and Cornerstone argue that Plaintiff's requests exceed the bounds of permissible discovery under Rule 26(a)(2)(B) (concerning "Required Disclosures" in expert reports) and Rule 26(b)(4)(B) (concerning discovery of consulting experts' opinions). However, the appropriate legal standard for the scope of discovery here is Rule 26(b)(1), and under that standard there is no question that the requested materials and testimony are relevant. Moreover, neither Defendants nor Cornerstone assert that any attorney-client privilege or work product doctrine applies to shield the requested materials from discovery, and they do not claim that any exceptional expense or burden would be incurred in the production. Given that the requested materials are well within the bounds of permissible discovery under Rule 26(b)(1), Plaintiff respectfully requests that the Court compel production.

---

3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Dkt. at 255, Ex. 4 (Stulz Dep. Tr. at 128:16-129:19).

I.   **Plaintiff's Discovery Requests Seek Relevant Information Within The Bounds Of Discovery Under The Federal Rules**

The requested documents and testimony are relevant to Professor Stulz's credibility and independence as an expert witness and thus are well within the bounds of permissible discovery under the Federal Rules of Civil Procedure. Recognizing the low threshold of relevance under Rule 26(b)(1), Defendants dubiously argue that Plaintiff's requests exceed the permissible bounds of discovery because they seek information beyond the simple statement of compensation for an expert's study and testimony which is required to be included in his report under Rule 26(a)(2)(B). (Resp. at 11-12). However, that rule does not purport to describe the full scope of available discovery, and numerous cases establish the availability of further information concerning expert compensation. Hence, Defendants' arguments are without merit.[4] Moreover, despite Defendants' claims to the contrary, Plaintiff has shown that the requested documents are relevant to Professor Stulz's credibility and independence as a testifying expert, and are therefore discoverable.

   a. **Relevant Documents Concerning Professor Stulz's Compensation Are Subject To Discovery**

Plaintiff's requests to Defendants and Cornerstone seek documents within the scope of the discovery rules. By the plain text of Rule 34(a) governing requests for documents, "A party may serve on any other party a request within the scope of Rule 26(b)...to produce...any

---

[4] Defendants cited *Amster v. River Capital Intern'l Group*, No. 00 Civ. 9708 (DCDF), 2002 WL 2031614 (S.D.N.Y. Sept. 4, 2002) in support of their claim that only a statement of total compensation is required, and not the production of compensation-related documents. However, the *Amster* court acknowledged other cases in which compensation-related document productions were ordered, and stated that its reason for not ordering the production of an expert's invoices in the matter before it was that "defendants have only articulated an argument in support of discovering the expert's total compensation (as opposed to a breakdown of the expert's various services)[.]" Thus, not only does *Amster* not support Defendants' proposition that documents concerning Professor Stulz's compensation are not discoverable, but it in fact supports Plaintiff's argument that they are discoverable, and that they should be produced here ▮

designated documents[.]"[5] Thus, provided that the information sought "is relevant to the claim or defense of any party," it is subject to discovery. Fed. R. Civ. P. 26(b)(1). With respect to testifying experts in particular, courts have found that their "compensation and the terms of their engagements obviously are relevant to the credibility of their testimony and should be discoverable[.]" *In re Parmalat Secs. Litig.*, No. 04 MD 1653(LAK), 2007 WL 1815461 at *1 (S.D.N.Y. June 25, 2007).

Indeed, numerous courts have compelled discovery, whether in the form of documents, testimony or interrogatory responses, of expert compensation information which is relevant to a testifying expert's credibility. *See, e.g., First State Bank of Junction City, Kan. v. Deere & Co.*, Civ. A. No. 86-2308-S, 1991 WL 46375 (D. Kan. Mar. 15, 1991) (ordering production of "[a]ll financial records relating to payments to [the expert] for testimony in product liability cases as an expert for plaintiff over the past five (5) years"); *Rector Church Wardens v. Hussman Corp.*, Civ. A. No. 91-7310, 1993 WL 29147 (E.D. Pa. Feb. 4, 1993) (compelling responses to interrogatories concerning expert's retention, the compensation paid to the expert and how the compensation was determined); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, No. CV 91-4178-RG (Ex), 1993 WL 360674 (C.D. Cal. Aug. 6, 1993) (compelling production of all invoices rendered by experts in connection with the litigation); *Boselli v. Se. Pa. Transp. Auth.*, 108 F.R.D. 723 (E.D. Pa. 1985) (compelling responses to interrogatories concerning the prior employment of experts by defendant, total compensation paid to the experts over the prior three years, and the percentage of the experts' gross annual income which was derived from defendant); *and Behler v. Hanlon*, 199 F.R.D. 553 (D. Md. 2001) (compelling deposition testimony regarding the percentage of expert's gross income attributable to expert witness

---

[5] Likewise, Rule 34(c) provides for compelling document productions from non-parties in accordance with the procedure described in Rule 45 governing subpoenas.

services). Thus, relevant documents concerning Professor Stulz's compensation are subject to discovery.

### b. The Requested Documents Are Relevant To Professor Stulz's Credibility and Independence

As described more fully in Plaintiff's Motion, (see Mot. at 10-12), the document requests seek information which is relevant to Professor Stulz's credibility and independence, ███████ ████████████████████████████████████████████ ████████████████████████████████████████ This information is needed to determine ████████████████████████████ ███████████████████████ his financial motivation to testify here. ███████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

Thus, documents regarding the entirety of Professor Stulz's relationship with Cornerstone, ████████████████████████████████████████ are relevant to his credibility and should be produced.

5

███████████████████████████████████████

███████████████████████████████████

████████████████████████████████ *See, e.g., Allstate Ins. Co. v. Boecher*, 733 So.2d 993, 997-998 (Fla. 1999) ("The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing."); *see also, Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) (superseded by rule on separate issue) ("A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases.")

█████████████████████████████████████

███████████████████████████ Defendants are well aware of Cornerstone's extensive history of providing expert consulting services for defendants in securities class action cases, which are far too numerous to list but include: *In re Lantronix Securities Litigation*, No.02-Civ-7966 (GEL) (S.D.N.Y.); ███████████████████████████████ *In re Xcelera.com Securities Litigation*, No. 00-11649-RWZ (D. Mass.); █████████████

█████████████████████████████████████

█████████████████████████████████████

████████████████ *In re Broadcom Corporation Securities Litigation*, No. SACV 01-275 GLT (MLGx), (C.D. Cal.); *In re Omnicom Group, Inc. Securities Litigation*, No. 02 Civ. 4483 (WHP), (S.D.N.Y.); ██████████████████████████████

███████████████ *In re JDS Uniphase Corporation Securities Litigation*, No. C 02-1486 CW (EDL), (N.D. Cal.); ███████████████████████████

█████████████████████████████████████

███.⁶ In fact, Cornerstone and Professor Stulz recently worked together on behalf of Defendant Credit Suisse as the consulting and testifying experts, respectively, in both the *Lantronix* and ███ cases noted above, and Professor Stulz worked with Cornerstone in the ███ and ███ cases noted above as well. ███████████████████████████████ *See* Dkt. at 255, Ex. 4, (Stulz Dep. Tr. at 74:23-75:15; 19:21-21:12, and; 64:2-10). Thus, documents and testimony ███████████████████████████████ ███ are relevant to his potential bias and lack of independence here.

Defendants' claim that they have "'done everything possible to accommodate the requests of' Plaintiff," however, the information Defendants have provided ███ ███ leaves significant questions unanswered ███ ████████████████████████████████████████████████████████████████████ Resp. at 12-13. These claims are entirely disingenuous. ███████████████ Therefore, the disclosures of his compensation for his work in this case are incomplete and misleading ████████████████████████████████████████████.

---

⁶ Indeed, Cornerstone's website advertises a list of clients which reads like a veritable "who's who" of securities class action defense counsel. *See* Ex. A to the Declaration of Melinda Rodon (the "Rodon Decl.") (attaching a printout of Cornerstone's published client list, also available at http://www.cornerstone.com/services_clients.html).

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████ The answer to this question should be readily available to both Defendants and Cornerstone, and considering the obvious relevance of compensation issues on bias, the fact that Defendants and Cornerstone have forced motion practice on this issue verges on bad faith.[7] In any event, as the Federal Rules expressly recognize, evasive and incomplete statements are insufficient and "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). Hence, Defendants' and Professor Stulz's incomplete statements and evasive answers to relevant questions ██████████████████████████████ are insufficient and boarder on bad faith.

## II. PLAINTIFF'S DISCOVERY REQUESTS TO CORNERSTONE SEEK RELEVANT, DISCOVERABLE INFORMATION

The document and testimony requests to Cornerstone seek relevant information which is not privileged, does not entail any significant burden to produce, and which Plaintiff has not been able to obtain from Professor Stulz. Moreover, the requests seek materials which are not exempted from discovery by the claimed "safe harbor" provision of Rule 26(b)(4)(B), and therefore, Cornerstone should be compelled to produce the requested documents and testimony.

### a. Plaintiff's Requests To Cornerstone Seek Relevant Information And Impose A Minimal Burden

Plaintiff's document and testimony requests to Cornerstone seek similar information as the document requests to Defendants, ████████████████████████████████

---

[7] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See, e.g.*, Dkt. at 255, Ex. 4, (Stulz Dep. Tr. at 169:3-172:19), ████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████ and thus are relevant to Professor Stulz's credibility and independence, as discussed above.[8] The request that Cornerstone produce a witness to testify concerning these matters was issued in the likely event that Cornerstone's documents do not fully reflect or clearly explain: ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████ Hence, contrary to Cornerstone's arguments, the requests seek information which is vital to an understanding of the full relationship between Cornerstone and Defendants' testifying expert, ████████████████, and is relevant to his credibility and independence.

Furthermore, sensitive to the special concerns regarding the burdens imposed on non-parties, Plaintiff requested Cornerstone's documents and witness be produced in the District and city where the relevant Cornerstone office is located. This accommodation, together with the limited nature of Plaintiff's requests, will minimize the burden to Cornerstone in responding to Plaintiff's document and testimony requests. Indeed, in its Response, Cornerstone does not claim that the requests impose any significant expense or burden. Thus, Cornerstone should be compelled to produce the requested documents and witness for deposition.

### b. Plaintiff's Requests To Cornerstone Are Within The Scope Of Permissible Expert Discovery Under Rule 26(b)(4)

Finally, contrary to Cornerstone's arguments, Plaintiff's requests to Cornerstone do not implicate the Rule 26(b)(4)(B) limitations on non-testifying expert discovery.[9] As discussed in

---

[8] To the extent that document requests to Defendants and Cornerstone seek identical responsive documents and Defendant Credit Suisse has the ability to obtain Cornerstone's documents, Plaintiff submits that the burden of production would more appropriately be placed on Defendants.

[9] Indeed, Defendants tacitly acknowledge that the information Plaintiff seeks is not of "the types of 'facts or opinions' contemplated by the rule[.]" Resp. at 20. Nonetheless, they argue that if it were, Plaintiff has not shown "exceptional circumstances" warranting production.

9

the Advisory Committee notes to Rule 26(b)(4), the rule was added to adopt a form of the "unfairness" doctrine developed in the courts, which permits discovery as to testifying experts "in order to allow the opposing party a fair opportunity to prepare to cross-examine the witness," but provides more limited discovery with respect to non-testifying experts in order to prevent an opponent from "try[ing] to benefit through discovery from the other side's better preparation." *In re PolyMedica Corp. Secs. Litig.*, 235 F.R.D. 28, 33 (D. Mass 2006) (Young, J.), *citing* Fed. R. Civ. P. 26, 1970 Advisory Committee notes.

In line with this doctrine and rule, Plaintiff's requests here seek information relevant to challenging Defendants' *testifying* expert, through cross-examination or otherwise, and do not seek anything that could even colorably be claimed to constitute the fruits of Cornerstone's labor as a consulting expert for Defendants, which is protected under the rule. *Boselli*, 108 F.R.D. at 726, (stating that "interrogatories concerning the compensation of defendant's experts does not interfere with one of the chief purposes behind the adoption of Rule 26(b)(4) and the limitations placed on the scope of discovery concerning experts, that being, the fear that one side will unduly benefit from the other's preparation."); *see also, Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999), *aff'd in* 203 F.3d 821 (4th Cir. 2000)) (allowing discovery from non-testifying expert because the discovery requests did not entail "the sort of free riding that Rule 26(b)(4)(B) was meant to prevent."). For example, Plaintiff has not requested any documents or testimony concerning Cornerstone's opinions, analyses, research or other work conducted on Defendants' behalf in connection with this litigation. Further to the point, the most appropriate Cornerstone witness for the testimony subjects designated by Plaintiff will likely be a member of Cornerstone's managerial or administrative staff, such as the controller or human resources personnel, as opposed to the

Cornerstone experts involved in preparing the underlying analyses in this case. Hence, Plaintiff's requests here clearly do not implicate the concerns embodied by the unfairness doctrine[10] and are not sheltered from production by the claimed safe harbor provision of Rule 26(b)(4)(B). Plaintiff is therefore not required to make any showing of "exceptional circumstances" warranting the requested production[11] and Plaintiff's document and testimony requests to Cornerstone should be granted.

### III.   Conclusion

For the reasons set forth above, Plaintiff respectfully requests that the Court order production of the requested documents and testimony from Defendants and Cornerstone.

DATED:  September 22, 2008                         KAPLAN FOX & KILSHEIMER LLP


By: /s/ *Frederic S. Fox*

Frederic S. Fox (admitted *pro hac vice*)
Joel B. Strauss (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Melinda D. Rodon (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714

---

[10] Likewise, other policy considerations which courts have noted as supporting the rule are similarly inapplicable here. In *Callaway Golf Co. v. Dunlop Slazenger Group Americas, Inc.*, No. Civ.A. 01-669(MPT), 2002 WL 1906628 at *1 n. 3 (D. Del. Aug. 14, 2002), the court noted that in addition to the unfairness doctrine, significant policy considerations supporting Rule 26(b)(4)(B) included: (1) encouraging counsel to obtain necessary expert advice without fear that the adversary may obtain such information; (2) preventing a chilling effect on experts serving as consultants if their testimony could be compelled; and (3) preventing prejudice to the retaining party if the opposing party were allowed to call at trial an expert who provided an unfavorable opinion to the party who first retained them. Here, there is no reason to believe that compelling production ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would have any "chilling effect" on an expert's analyses or advice to counsel, and such a production would reveal nothing of any unfavorable opinions which the expert may have developed.

[11] Moreover, even assuming *arguendo* that the limitations of Rule 26(b)(4)(B) applied here, the record shows that the requested information is not available from any other source, which is sufficient to establish exceptional circumstances warranting production under the plain language of Rule 26(b)(4)(B)(ii). *See* Mot. at 12; *see also*, *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999) (finding that it was impracticable for defendant to obtain the information requested from plaintiff's non-testifying expert by other means, and thus, exceptional circumstances warranted production from the expert.)

*Lead Counsel for Lead Plaintiff and the Proposed Class*

Edward F. Haber (BBO # 215620)
Todd Heyman (BBO # 643804)
SHAPIRO HABER & URMY LLP
53 State St. 37th Floor
Boston, MA 02109
Telephone: 617-439-3939
Facsimile: 617-439-0134

*Liaison Counsel*

## CERTIFICATE OF SERVICE

      I, Melinda Rodon, declare that on September 22, 2008, I caused the attached document to be served upon all counsel of record by filing a true a correct copy of the same via the Court's ECF System.

                                                                          /s/ Melinda D. Rodon  
                                                                           Melinda D. Rodon