UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE CREDIT SUISSE – AOL SECURITIES LITIGATION ) ) ) ) ) ) This document relates to: ) ) ALL ACTIONS ) ) | Case No. 1:02 CV 12146<br>(Judge Gertner) |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
ELLIOTT ROGERS' MOTION FOR SUMMARY JUDGMENT

Warren L. Feldman
Jeff E. Butler
Angelique M. Shingler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

Robert A. Buhlman
Siobhan E. Mee
BINGHAM MCCUTCHEN LLP
One Federal Street
Boston, Massachusetts 02110
Telephone: (617) 951-8000
Facsimile: (617) 951-8736

*Attorneys for Defendant Elliott Rogers*

# Table of Contents

Preliminary Statement ........................................................................................................... 1

Relevant Facts ...................................................................................................................... 1

Argument .............................................................................................................................. 4

I.    SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE
      CONTROL PERSON CLAIM AGAINST ROGERS ................................................ 4

      A.    Plaintiff Cannot Establish a Primary Violation by Kiggen or Martin ............ 4

      B.    Plaintiff Cannot Establish That Rogers Controlled Kiggen or Martin .......... 5

            1.    Rogers Did Not Actually Exercise Control Over the Activities of
                  Kiggen or Martin ................................................................................. 5

            2.    Rogers Did Not Have the Power to Determine the Content of the
                  AOL Reports ....................................................................................... 7

      C.    Rogers Acted in Good Faith and Did Not Directly or Indirectly Induce
            Alleged Misstatements or Omissions in the AOL Reports ............................ 8

Conclusion ......................................................................................................................... 10

## TABLE OF AUTHORITIES

### CASES

## TABLE OF AUTHORITIES

### CASES

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) .................................................................. 5, 6 7

*In re Centennial Technologies Litig.*,
  52 F. Supp. 2d 178 (D. Mass. 1999) ............................................................ 5

*In re Credit Suisse-AOL Securities Litig.*,
  465 F. Supp. 2d 34 (D. Mass. 2006) ......................................................... 1, 5

*Dellastatious v. Williams*,
  242 F.3d 191 (4th Cir. 2001) .................................................................... 9

*Donohoe v. Consolidated Operating & Production Corp.*,
  30 F.3d 907 (7th Cir. 1994) ...................................................................... 9

*Ernst & Ernst v. Hochfelder*,
  425 U.S. 185 (1976) ............................................................................ 8, 9

*G.A. Thompson & Co. v. Partridge*,
  636 F.2d 945 (7th Cir. 1981) ..................................................................... 9

*Garvey v. Arkoosh*,
  354 F. Supp. 2d 73 (D. Mass. 2005) ............................................................ 5

*Suna v. Bailey Corp.*,
  107 F.3d 64 (1st Cir. 1997) ....................................................................... 5

### STATUTES

15 U.S.C. § 78t(a) ....................................................................................... 4

Defendant Elliott Rogers ("Rogers") respectfully submits this memorandum of law in support of his motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rogers also submits the Declaration of Elliott Rogers dated November 3, 2008 ("Rogers Decl.") and the Declaration of Jeff E. Butler dated November 4, 2008 ("Butler Decl.") in support of this motion.

### Preliminary Statement

The only claim against Elliott Rogers is for control person liability based on Rogers' alleged control over research analysts Jamie Kiggen and Laura Martin. In its decision denying the motion to dismiss this claim, the Court admitted that this claim presented "a close question" even accepting that the allegations in the Complaint were true and drawing all inferences in Plaintiff's favor. *See In re Credit Suisse-AOL Securities Litig.*, 465 F. Supp. 2d 34, 61 (D. Mass. 2006). Now, after extensive discovery, this is no longer a close question. The evidence is overwhelming that Rogers did not exercise any meaningful control over Kiggen or Martin, that Rogers did not influence the content of research reports on AOL in any way and that Rogers acted in good faith at all times. For these reasons, Rogers is entitled to summary judgment and the control person claim (Count II) should be dismissed with prejudice.

### Relevant Facts

This is a class action brought on behalf of purchasers of AOL Time Warner, Inc. ("AOL") common stock between January 12, 2001, and July 24, 2002. Plaintiff claims that defendant Credit Suisse First Boston ("CSFB") and two of its research analysts, Jamie Kiggen and Laura Martin, issued some 35 research reports on AOL during the class period (the "AOL Reports") that allegedly contained material misstatements or omissions in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"). The sole claim against Rogers

1

is under Section 20(a) of the Exchange Act based on Rogers' alleged control over Kiggen and/or Martin.

Rogers was part of the Technology Group ("Tech Group") at CSFB, which was headed by Frank Quattrone. (Rogers Decl. ¶ 1.) Within the CSFB organization, the Tech Group had exclusive jurisdiction over investment banking and equity research relating to technology companies. (*Id.* ¶ 2.) In April 2000, Rogers became the head of research for the Tech Group. (*Id.* ¶ 1.) In that capacity, Rogers reported jointly to Quattrone and Al Jackson, who was the overall head of research for CSFB. (*Id.*) All of the research analysts in the Tech Group reported, directly or indirectly, to Rogers. (*Id.* ¶ 3.) However, there were also large numbers of research analysts outside the Tech Group (covering non-technology companies) who did not report to Rogers in any way. (*Id.*)

AOL was the product of a merger between America Online, Inc. and Time Warner Inc. that closed in January 2001. Prior to the merger, Kiggen was the analyst in the Tech Group who covered America Online and Martin was the analyst from outside the Tech Group who covered Time Warner. (*Id.* ¶¶ 6,11.) Because the combined company was considered a technology company, falling within the charter of the Tech Group, Kiggen became the lead analyst for AOL after the merger, with Martin playing a substantial, supporting role. (*Id.* ¶ 6.) As the lead analyst, Kiggen had the final say on the content of the AOL Reports, including the earnings projections and price targets included in those reports. (*Id.* ¶ 8.)

Rogers was Kiggen's nominal supervisor, but Kiggen did not require supervision and Rogers had little actual authority over him. (*Id.* ¶¶ 5, 7.) Kiggen had a strong reputation as in Internet analyst, and Rogers had no expertise in that area. (*Id.* ¶ 7; Butler Decl. Exs. A, D; Quattrone Tr. 63:16-64:6, 141:6-18, 191:11-192:2, Butler Decl. Ex. I; Watters Tr. 258:11-18,

2

Butler Decl. Ex. L.) Rogers and Kiggen were both managing directors, and their compensation in 2001 was basically the same. (*Id.* ¶ 5.) In addition, Kiggen had an employment contract covering 2001 and 2002, which provided for a minimum guaranteed compensation in each of those years. (*Id.*; Butler Decl. Exs. B, C.) While this contract was in place, Rogers did not have the power to terminate his employment or to lower his overall compensation. (Rogers Decl. ¶ 5.) Rogers did not even review Kiggen at the end of 2001 as part of the normal, firm-wide review process. (*Id.*) Rogers considered himself to be an administrative advisor to Kiggen, nothing more. (*Id.* ¶ 7.)

Because she was outside the Tech Group, Martin did not report to Rogers in any way. (*Id.* ¶¶ 3, 4.) She reported to John Hervey who in turn reported to Jackson. (*Id.* ¶ 3.) Rogers did not have authority to terminate Martin and he did not have any discretion over her compensation. (*Id.* ¶ 4.) In addition, Martin was based in Los Angeles while Rogers was based in New York, so the two rarely had any opportunity to interact. (*Id.*)

Kiggen and Martin did not always have a good working relationship, and Kiggen complained to both Quattrone and Rogers about her behavior. (*Id.* ¶ 12.) In response, Rogers offered to help by talking to Martin's ultimate boss, Al Jackson. (*Id.* ¶¶ 13-14.) Kiggen, however, did not want Rogers to take that step, and Rogers never actually did anything to try to change Martin's behavior. (*Id.* ¶ 14.)

Rogers did not play any role in the preparation of the AOL Reports. The reports were drafted by Kiggen and his team, and then reviewed by a Supervisory Analyst (someone other than Rogers) and the CSFB Compliance Department. (*Id.* ¶¶ 8-9.) Rogers did not review drafts of the reports, and his approval was not needed for publication. (*Id.* ¶ 8; Kiggen Tr. at 245:15-246:6, Butler Decl. Ex. G; Watters Tr. at 271:5 -272:6, Butler Decl. Ex. L.) He also did not

3

communicate with Kiggen, Martin, or anyone on their respective teams, concerning AOL in general or any AOL Report in particular. (*Id.*; Kiggen Tr. at 245:20-25, Butler Decl. Ex. G; Watters Tr. at 271:23-272:6, Butler Decl. Ex. L.) Rogers relied on the compliance review to detect any legal risks that might arise from the AOL Reports. (*Id.* ¶ 9.) He never had any reason to believe that the AOL Reports prepared by Kiggen were inaccurate or misleading in any way, or that Kiggen did not actually believe the estimates and projections contained in the reports. (*Id.* ¶ 10.)

## Argument

### I. SUMMARY JUDGMENT SHOULD BE GRANTED DISMISSING THE CONTROL PERSON CLAIM AGAINST ROGERS.

Plaintiffs cannot establish that Rogers is liable under Section 20(a) as a control person. To prove control person liability, a plaintiff must establish (1) a primary violation of the securities laws and (2) control of the primary violator by the defendant. *See* 15 U.S.C. § 78t(a). Even if there are issues of fact as to these elements, Section 20(a) provides an affirmative defense if "the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).

Rogers is entitled to summary judgment on the control person claim because (i) there was no primary violation by Kiggen or Martin, (ii) there is no genuine issue of fact that Rogers did not control Kiggen or Martin, and (iii) there is no genuine issue of fact that Rogers acted in good faith and did not directly induce the alleged misstatements or omissions in the AOL Reports.

#### A. Plaintiff Cannot Establish a Primary Violation by Kiggen or Martin.

Rogers adopts and incorporates the arguments made by CSFB and the other Defendants that there was no primary violation of Section 10(b) by Kiggen or Martin including, *inter alia*, that Kiggen and Martin did not make any material misrepresentation or omission, that Kiggen

4

and Martin did not act with scienter and that Plaintiff has failed to establish loss causation. Absent proof of a primary violation, there can be no control person liability. *See Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 84 (1st Cir. 2002) (stating "there must be a primary violation for liability under section 20(a)"); *Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 85 (D. Mass. 2005) (dismissing the Section 20(a) claim for failure to "allege a primary violation of Section 10(b)"); *Suna v. Bailey Corp.*, 107 F.3d 64, 72 (1st Cir. 1997). Summary judgment should be granted in favor of Rogers on this basis alone.

### B.    Plaintiff Cannot Establish That Rogers Controlled Kiggen or Martin.

The Court has previously adopted the standard for control articulated by Judge Keeton in *In re Centennial Technologies Litigation*, 52 F. Supp. 2d 178 (D. Mass. 1999), which we assume to be law of the case for purposes of this motion. *See In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 59 (D. Mass. 2006). Under *Centennial*, "[a] control person relationship exists whenever (i) the alleged control person actually exercised control over the general operations of the primary violator and (ii) the alleged control person possessed—but did not necessarily exercise—the power to determine the specific acts or omissions upon which the underlying violation is predicated." 52 F. Supp. 2d at 186. Here, Plaintiff cannot establish these requirements based on the factual record developed through discovery.

#### 1.    Rogers Did Not Actually Exercise Control Over the Activities of Kiggen or Martin.

There is no evidence that Rogers exercised actual control over the activities of Kiggen or Martin. Kiggen may have reported to Rogers on the organizational chart, but that is not enough to establish control. *See Aldridge*, 284 F.3d at 85 (holding that "status alone is not enough" to establish control). Moreover, as a practical matter, Rogers had very little power over Kiggen. They both had the same rank—Managing Director—and their total compensation was basically

5

the same. (Rogers Decl. ¶ 5.) Moreover, because Kiggen had an employment contract with guaranteed minimum compensation, Rogers did not have the power to terminate Kiggen's employment or to reduce his compensation in 2001 or 2002. (*Id.*) Rogers did not even review Kiggen as part of the annual review process at the end of 2001. (*Id.*) Rogers considered himself to be an administrative advisor to Kiggen, nothing more. (*Id.* ¶ 7.)

In addition, Kiggen was considered to be an experienced and competent research analyst for internet companies, and he operated with a high degree of autonomy within the Tech Group. (*Id.*) In contrast, Rogers had no experience covering internet companies, and he had no particular expertise or insight in that area. (*Id.*) Moreover, Rogers' job description did not include reviewing the work of individual analysts on a day-to-day basis, which would have been virtually impossible to do for all of the 40-50 analysts within the group. (*Id.* ¶¶ 3, 9.) Normally, Rogers would review the work of an individual analyst only if a problem had been flagged by the CSFB Compliance Department. (*Id.* ¶ 9.) In sum, there is no genuine issue of fact that Kiggen carried out his activities as an internet analyst without any input or interference from Rogers.

Rogers had every right to be a "hands off" boss to Kiggen. In *Aldridge*, the First Circuit observed that the controlling shareholders of a corporation "should have the ability to be passive, leaving the management to the directors and officers." 284 F.3d at 85. On that basis, the court held that controlling shareholders were not liable under Section 20(a) unless they were shown to be "actively participating in the decisionmaking processes of the corporation." (*Id.*) The same reasoning should apply here. Rogers was not required to micro-manage Kiggen, and control person liability should not be imposed without evidence that Rogers actively participated in Kiggen's decision-making processes. Summary judgment is appropriate here because no such evidence exists.

6

In the case of Martin, it is undisputed that she did not even report to Rogers. (Rogers Decl. ¶ 3; Rogers Tr. at 106:11-25, Butler Decl. Ex. J.) Martin was not in the Tech Group, and she reported to John Hervey and Al Jackson—not Rogers—during the relevant time period. (Rogers Decl. ¶ 3.) Rogers did not have the power to terminate Martin's employment, and he did not have any influence over her compensation. (*Id.* ¶ 4.) Moreover, there is no evidence that Rogers influenced Martin's activities on an informal basis, which would have been difficult in any case because Martin was based in Los Angeles while Rogers worked in New York. (*Id.*)

Plaintiff has pointed to an e-mail from Rogers offering to give Kiggen "high cover" in his dealings with Martin, but the e-mail itself indicates (and Rogers has explained) that he was only offering to speak to Al Jackson, who was Martin's ultimate boss. (Rogers Decl. ¶ 13 and Ex. B.) It is undisputed that Rogers did *not* speak to Al Jackson about this matter, and that Rogers did not actually *do* anything to give "high cover" to Kiggen. (*Id.* ¶ 14.) Accordingly, this e-mail does not show that Rogers actually exercised control over Kiggen or Martin.

In sum, there is no genuine issue of fact that Rogers did not exercise actual control over the activities of Kiggen or Martin during the relevant time period. Accordingly, summary judgment should be granted in favor of Rogers.

### 2. Rogers Did Not Have the Power to Determine the Content of the AOL Reports.

There is also no genuine issue of fact that Rogers did not have any power over the content of the AOL Reports prepared by Kiggen and Martin. Kiggen was the lead analyst, and he had the final say on the content of those reports. (Rogers Decl. ¶¶ 6, 8.) Rogers did not review the AOL Reports, and he did not approve them prior to publication. (*Id.* ¶ 8.) This was confirmed during the depositions of both Kiggen and his assistant, Catherine Watters. (Kiggen Tr. at 245:11-246:6, Butler Decl. Ex. G; Watters Tr. at 271:5-272:6, Butler Decl. Ex. L.)

Moreover, there is no evidence that Rogers ever communicated with Kiggen, Martin or anyone else involved in the preparation of the AOL Reports concerning AOL generally or the content of any particular report. (Rogers Decl. ¶ 8 ) Again, this has been confirmed by both Kiggen and Watters. (Kiggen Tr. at 245:20-25, Butler Decl. Ex. G; Watters Tr. at 271:23-272:6,, Butler Decl. Ex. L.) In sum, there is simply no evidence to support the contention that Rogers had the power to control the content of the AOL Reports at issue in this case.[1]

### C. Rogers Acted in Good Faith and Did Not Directly or Indirectly Induce Alleged Misstatements or Omissions in the AOL Reports.

Assuming, for purposes of argument, that there was a genuine issue of fact as to the elements of control person liability, Rogers still would be entitled to summary judgment because he acted in good faith and did not directly or indirectly induce the alleged misstatements and omissions at issue. Addressing these requirements in reverse order, there is no evidence whatsoever that Rogers caused or induced any alleged misstatements and omissions in the AOL Reports. Rogers did not review or approve the AOL Reports, and he did not communicate with Kiggen or Martin concerning their content. (Rogers Decl. ¶ 8.) Simply put, Rogers had no role whatsoever in determining the content of the AOL Reports.

Application of this affirmative defense therefore turns on whether Rogers acted in good faith in failing to prevent or oppose the alleged misstatements or omissions in the AOL Reports. We have not located any decisions from the First Circuit providing guidance on how to interpret the good faith requirement under Section 20(a). The Supreme Court, however, has addressed this issue. In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), the Court cited the good faith

---

[1] The Second Amended Complaint alleges that Rogers "reviewed, approved, and controlled the content and dissemination of the analyst reports relating to AOL." (Compl. ¶ 141.) Discovery in this case has revealed no evidentiary support for this allegation.

8

defense of Section 20(a) as a provision of the Exchange Act that "contains a state-of-mind condition requiring something more than negligence." *Id.* at 209 n.28. Courts outside the First Circuit have interpreted this footnote from *Ernst* to mean that good faith may be established by showing an absence of knowing or reckless conduct. *See Dellastatious v. Williams*, 242 F.3d 191, 194 (4th Cir. 2001) ("To determine whether the good-faith affirmative defense has been satisfied under section 20(a), defendants must show that they did not act recklessly."); *Donohoe v. Consolidated Operating & Production Corp.*, 30 F.3d 907, 912 (7th Cir. 1994) ("[T]he good faith defense exculpates defendants whose behavior is merely negligent."); *G.A. Thompson & Co. v. Partridge*, 636 F.2d 945, 960 (7th Cir. 1981) ("[T]he question is whether the defendant acted recklessly in failing to do what he could have done to prevent the violation."). In a case such as this one, where the alleged control person did nothing to prevent or oppose an alleged violation of Section 10(b), the good faith defense should apply upon a showing that the alleged control person did not have actual knowledge of the violation and was not reckless in failing to detect it.

In this case, Rogers did not have any actual knowledge of alleged misstatements and omissions in the AOL Reports and he was not reckless in failing to recognize them. Rogers believed that Kiggen was an experienced and competent analyst who did not require close supervision. (Rogers Decl. ¶ 7.) The AOL Reports prepared by Kiggen were subject to review by a Supervisory Analyst (who was someone other than Rogers) and the CSFB Compliance Department, and Rogers reasonably relied on those reviews to detect any potential problems or risks created by those reports. (*Id.* ¶ 9.) Rogers was not privy to any inside information concerning AOL, and he did not have any reason to believe that the AOL Reports prepared by Kiggen were inaccurate at the time they were published or that they did not reflect Kiggen's

actual beliefs about the future performance of the company. (*Id.* ¶ 10.) Simply put, there is no evidence that Rogers either had actual knowledge of any alleged misstatements and omissions or that he was reckless in failing to detect those alleged violations of Section 10(b). Under these circumstances, the good faith defense precludes control person liability under Section 20(a).

## Conclusion

For all the foregoing reasons, summary judgment should be granted in favor of Rogers and the Section 20(a) claim against Rogers (Count II) should be dismissed with prejudice.

Dated: Boston, Massachusetts
November 4, 2008

Respectfully Submitted,

BINGHAM MCCUTCHEN LLP

By:   /s/ Siobhan E. Mee

Robert A. Buhlman, BBO No. 554393
Siobhan E. Mee, BBO No. 640372
One Federal Street
Boston, Massachusetts 02110
Telephone: (617) 951-8256
Facsimile: (617) 428-6327

Warren L. Feldman
Jeff E. Butler
Angelique M. Shingler
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375

*Attorneys for Defendant Elliott Rogers*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF System will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and, except to the extent registered participants at the same firm(s) received copies electronically as identified on the Notice of Electronic Filing, paper copies will be sent to those indicated as non registered participants by U.S. Mail on November 4, 2008.

/s/ Siobhan E. Mee
Siobhan E. Mee, BBO #640372
Bingham McCutchen LLP
One Federal Street
Boston, MA 02110

11

NYB 1602062v1