UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re CREDIT SUISSE – AOL SECURITIES LITIGATION | Case No. 1:02 CV 12146 (Judge Gertner) |
| This Document Relates To:<br><br>ALL ACTIONS | Filed Pursuant to Leave Granted on March 19, 2010 |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE
OF SUPPLEMENTAL AUTHORITY**

On March 19, 2010, Defendants filed a Notice of Supplemental Authority ("Defendants' Notice") attaching two recent decisions from other jurisdictions, *In re Omnicom Group, Inc. Securities Litigation*, No. 08-cv-612, 2010 WL 774311 (2d Cir. March 9, 2010) ("*Omnicom*"), and *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton Co.*, No. 08-11195, 2010 WL 481407 (5th Cir. Feb. 12, 2010) ("*Halliburton*"). Although Defendants argue that these cases are "highly relevant" to the loss causation issues presently before the Court, these cases add nothing new to the arguments they previously asserted in their summary judgment and expert preclusion briefing.

In *Omnicom*, the Second Circuit upheld the district court's grant of summary judgment on loss causation grounds. Defendants' Notice thus regurgitates the same arguments they previously asserted under the district court's opinion, which arguments should be rejected for the same reasons set forth in Plaintiffs' opposition to their motions.[1] *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment 52-58 (Dkt. No. 288) ("Plts.'

---

[1] Moreover, *Omnicom* is factually distinct. In *Omnicom*, the allegedly fraudulent "use of the Seneca transaction as an accounting method to remove losses from Omnicom's books was known to the market a year before" the first alleged corrective disclosure. *Omnicom* at *9. By contrast, here, the impact of the declining advertising market on AOL's financial condition was not known prior to the first alleged corrective disclosure on July 18, 2001, when AOL announced disappointing second quarter results due to declining ad revenues.

S.J. Opp."); Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Preclude the Expert Opinions of Scott D. Hakala, M. Laurentius Marais, Reinier Kraakman and Bernard Black 25-30 (Dkt. No. 313) ("Plts.' Expert Preclusion Opp.").

*Halliburton* is also unhelpful here. In *Halliburton*, the Fifth Circuit added to its widely criticized class certification standard for securities fraud cases[2] by requiring that a plaintiff prove loss causation with a corrective disclosure that reveals not only that an alleged misstatement was false, but also that "the defendant more likely than not misled or ***deceived*** the market[,]" as opposed to simply erring.[3] *Halliburton* at *3-4 (emphasis added). Irrespective of the merits of such a test, which essentially collapses scienter into loss causation and demands both be demonstrated in order to certify a class, *Halliburton* is irrelevant here, given that the Class has already been certified.

As set forth further below, Defendants' arguments concerning the significance of these cases to the present matter are wrong.

1. <u>Plaintiffs' Expert Reports, Together With All of the Proffered Evidence, Are Sufficient to Defeat Summary Judgment On Loss Causation.</u> As described in Plaintiffs' opposition papers on summary judgment and expert preclusion, there is ample evidence in support of Dr. Hakala's findings that the alleged corrective disclosures caused Plaintiffs' losses. *See* Plts.' S.J. Opp. 52-60; Local Rule 56.1 Statement of Material Facts in Support of Plaintiffs'

---

[2]  The seminal Fifth Circuit case on the issue, *Oscar Private Equity Invests. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir.2007), has been rejected and/or criticized by numerous other courts. *See, e.g., In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 93 (E.D.N.C. 2009) (stating that "[m]ost courts outside of the Fifth Circuit have rejected this decision" and citing cases).

[3]  *Halliburton*'s requirement that a plaintiff establish that a defendant "more likely than not misled" the market, and that the connection alleged between the loss and the corrective disclosure is "more probable than not," appears to flout the Supreme Court's mandate in *Twombly*, and affirmed in *Iqbal*, that a plaintiff need only raise "plausible grounds" for its claims, which the Court expressly stated "does not impose a probability requirement at the pleading stage[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see also*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (same). Indeed, the Court noted that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly* at 556 (internal quotation omitted).

Opposition to Defendants' Motions for Summary Judgment 89-97 (Dkt. No. 290) ("Plts.' 56.1"); Plaintiffs' Supplemental Memorandum in Opposition to Defendants' Motions for Summary Judgment 1-3 (Dkt. No. 322); Plts.' Expert Preclusion Opp. 20-34.  Although Defendants cite to *Omnicom* to argue that "summary judgment is not per se precluded because there are conflicting experts," this misstates the issue here, because Defendants' expert **agreed** with Dr. Hakala's findings that the five alleged corrective disclosures significantly impacted AOL's stock price. Plts.' S.J. Opp. 53.  Thus, the only disputed issue is whether these disclosures should be deemed corrective of the alleged fraud, and Plaintiffs' claim that they should is well supported in the record and caselaw, as discussed herein and in Plaintiffs' briefs.

   2. <u>The Alleged Corrective Disclosures Are Not "Negative Recharacterizations of Previously Disclosed News."</u>  *Omnicom* does not advance Defendants' arguments that certain alleged corrective disclosures here were not "new" news and could not have impacted AOL's stock.  In *Omnicom*, the facts of the alleged fraud were disclosed more than a year before the first alleged corrective disclosure, and the court found that none of the alleged corrective disclosures "even purported to reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint[.]"  *Omnicom* at *8-9.  Defendants claim that, like the *Omnicom* disclosures, the analyst reports here on July 19, 2001 (concerning AOL's second quarter financial results) and February 20, 2002 (Lehman's report downgrading AOL) merely commented negatively on previously disclosed facts.  However, Defendants' arguments that these alleged corrective disclosures did not contain new, relevant information have all been thoroughly refuted in Plaintiffs' briefing.  *See* Plts.' S.J. Opp. 55-56 (concerning July 19, 2001 reports); 57-58 (concerning the Jan. 31 and Feb. 20, 2002 Lehman reports); Declaration of Melinda D. Rodon in Support of Plaintiffs' Opposition to Defendants' Motions for Summary

Judgment (Dkt. No. 289) ("Rodon Decl. Opp. S.J.") at Ex. 9 (Kraakman Rebuttal Report 10-11 (concerning February 20, 2002 Lehman report)); *compare* Rodon Decl. Opp. S.J. Ex. 236 (January 31, 2002 Lehman report on AOL) *with* Ex. 237 (February 20, 2002 Lehman report on AOL).

Moreover, unlike *Omnicom*, which alleged claims against an issuer, the present case is about misrepresentations in Defendants' analyst reports, and even *Omnicom* acknowledges that a "negative journalistic characterization of previously disclosed facts" may be corrective of "the journalists' opinions." *Omnicom* at *9.

3. <u>Plaintiffs Have Adequately Demonstrated That "At Least Some Portion" of The Alleged Stock Price Drops Are Attributable To Defendants' Fraud.</u>  Contrary to Defendants' arguments, *Omnicom* does not require any greater showing of the loss attributable to Defendants' fraud than the showing made by Plaintiffs here. *Omnicom* does not change the Second Circuit's loss causation test, and only requires a plaintiff to show "that at least some of the price drop was due to the fraud." *Omnicom* at *7 n.3; *see also*, *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (ruling that a plaintiff must provide "facts that would allow a factfinder to ascribe some rough proportion of the whole loss" to the defendant's misstatements); *In re Omnicom Group, Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 553 (S.D.N.Y. 2008) (stating that plaintiffs need to meet the *Lattanzio* standard but "plaintiffs ***need not quantify*** the fraud-related loss[.]") (emphasis added)).  Thus, the Second Circuit does not demand the specific "disaggregation" showing Defendants claim, and does not require "empirical data to account for other negative news" as the Fifth Circuit appears to require. *See Halliburton* at *9.  As described herein and in Plaintiffs' briefing, Dr. Hakala's analysis and the facts related to the corrective disclosures constitute an ample showing to meet or surpass the "rough proportion" Plaintiffs are

required to establish. *See* Plts.' S.J. Opp. 52-65; Plts.' Expert Preclusion Opp. 25-29 (concerning treatment of confounding news) and 32 (concerning calculation of CSFB's impact on AOL). Defendants' claim that anything more than this is required is unsupported in the jurisprudence.

4.  <u>Dr. Hakala's Opinions Are Supported By The Record.</u>  As set forth in Plaintiffs' summary judgment and expert preclusion briefing, the record fully supports the link alleged between Defendants' fraud and the corrective disclosures. *See, e.g.*, Plts.' 56.1 21-62 and 89-97. Defendants' attempt to bootstrap onto the irrelevant fact that Dr. Hakala's report in *Omnicom* was not ultimately persuasive under the totally distinct facts of that case should be rejected. Moreover, such an outcome is the rare exception.[4]

5.  <u>Defendants Concealed and Misstated the Impact of the Declining Ad Market On AOL.</u>  Plaintiffs have adduced ample evidence that Defendants concealed and misstated the impact of the declining advertising market on AOL's financial status, which materialized from July 18, 2001 through the end of the Class Period and caused Plaintiffs' losses. *See* Plts.' S.J. Opp. 5-14.  Nonetheless, as they did in their motion to dismiss and class certification briefing, Defendants try to confuse the issue, claiming that the general risk "of advertising weakness" – which is not the allegedly misstated risk – was known to the market.  This claim is irrelevant. *See In re Credit Suisse-AOL Sec. Litig.,* 465 F. Supp. 2d 34, 49 (D. Mass. 2006) ("The relevant truth that CSFB allegedly concealed was the impact of the advertising market on AOL's financial status.")  Moreover, *Omnicom* does not support Defendants' argument that loss causation cannot be shown through a materialization of the risk here, because unlike *Omnicom*, the alleged risk here was not known to the market prior to the first alleged corrective disclosure.

---

[4] *See* Plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Motion to Preclude the Expert Opinions of Rene M. Stulz and John Deighton (Dkt. No. 344) at 3-4 (citing fifteen cases in which Dr. Hakala's event studies were credited in the last six years alone).

5

DATED:  March 30, 2010    KAPLAN FOX & KILSHEIMER LLP

/s/  *Frederic S. Fox*_____
Frederic S. Fox (admitted *pro hac vice*)
Joel B. Strauss (admitted *pro hac vice*)
Donald R. Hall (admitted *pro hac vice*)
Melinda D. Rodon (admitted *pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  212-687-1980
Facsimile:  212-687-7714

*Lead Counsel for Lead Plaintiff, Bricklayers and Trowel Trades International Pension Fund, and the Class*

Edward F. Haber (BBO #215620)
Todd Heyman (BBO #643804)
SHAPIRO HABER & URMY LLP
53 State St.
Boston, MA 02109
Telephone:  617-439-3939
Facsimile:  617-439-0134

*Liaison Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Frederic S. Fox, certify that I caused a true and correct copy of the foregoing document to be filed using the Court's electronic filing system and served upon all counsel listed on the attached Service List via First Class Mail

March 30, 2010                                          _____/s/ *Frederic S. Fox*_____
                                                        Frederic S. Fox

**CREDIT SUISSE – AOL SECURITIES LITIGATION SERVICE LIST**

BINGHAM McCUTCHEN LLP
Robert A. Buhlman
Siobhan E. Mee
150 Federal Street
Boston, MA 02110
Tel: (617) 951-8256
Fax: (617) 428-6327

*Attorneys for Defendants Credit Suisse Securities (USA) LLC, Credit Suisse (USA), Inc., Jamie Kiggen, and Elliot Rogers*

– and –

DAVIS POLK & WARDWELL LLP
Lawrence Portnoy (admitted *pro hac vice*)
Avi Gesser (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4000
Fax: (212) 450-3800

*Attorneys for Defendants Credit Suisse Securities (USA) LLC and Credit Suisse (USA), Inc.*

– and –

LAW OFFICE OF HENRY PUTZEL, III
Henry Putzel, III (admitted *pro hac vice*)
565 Fifth Avenue
New York, NY 10017
Tel: (212) 661-0066
Fax: (212) 661-0415

*Attorney for Defendant Jamie Kiggen*

– and –

CLIFFORD CHANCE LLP
Warren L. Feldman (admitted *pro hac vice*)
Jeff E. Butler (admitted *pro hac vice*)
Dayna R. Cooper
31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375

*Attorneys for Defendant Elliott Rogers*

WILMER CUTLER PICKERING HALE
and DORR LLP
Jeffrey B. Rudman
Jonathan A. Shapiro
Jared C. Miller
60 State Street
Boston, MA 02109
Tel: (617) 526-6000

– and –

HOWARD, RICE, NEMEROVSKI,
CANADY, FALK & RABKIN, PC
Kenneth G. Hausman
Barbara A. Winters
Mark A. Sheft
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: (415) 434-1600

*Attorneys for Defendant Frank Quattrone*

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Eben P. Colby
James R. Carroll
One Beacon Street
Boston, MA 02108
Tel: (617) 573-4800
Fax: (617) 573-4822

*Attorneys for Defendant Laura Martin*